**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| DEBORAH K. HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:10-cv-0373-SEB-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Deborah K. Hughes ("Hughes") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

**I. Background**

Hughes applied for SSI and DIB on August 28, 2003, and October 6, 2003, respectively, alleging an onset date of June 28, 2003. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on November 22, 2005. Hughes was present, accompanied by her attorney. Medical and other records were introduced into evidence. Hughes, a medical expert and a vocational expert testified. The ALJ denied Hughes' applications on December 19, 2006. On May 1, 2007, the Appeals Council granted Hughes' request for review and remanded the action back to the ALJ.

On November 15, 2007, a second hearing was conducted. Hughes, two medical experts, and a vocational expert testified. The ALJ again denied Hughes' applications on October 10, 2008. On February 24, 2010, the Appeals Council denied Hughes' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Hughes met the insured status requirements of the Act through December 31, 2005; (2) Hughes had not engaged in substantial gainful activity since June 28, 2003, the alleged onset date; (3) Hughes had the following severe combination of impairments: chronic low back pain due to degenerative disc disease; severe neck pain; severe left shoulder pain; osteoarthritis in her feet bilaterally; swelling and numbness of the left arm and leg; headaches; and depression; (4) Hughes did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Hughes had the residual functional capacity ("RFC") to perform the full range of light exertional work as follows: lifting no more than twenty pounds at a time and frequent lifting or carrying objects weighing up to ten pounds; standing and/or walking, off and on, for a total of approximately six hours in an eight hour work day; with intermittent sitting up to two hours during the remaining time in the day or up to two hours in an eight hour work day; she could do some pushing and pulling of arm and/or leg controls; she could occasionally stoop; she could use her arms and hands to grasp, hold and turn objects; and she had no postural or environmental limitations; (6) Hughes was unable to perform any past relevant work; (7) Hughes was born on September 15, 1963, and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Hughes had at least a high school education and was able to communicate in English; (9) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Hughes was "not disabled" whether or not she had transferable job skills; and (10) considering Hughes' age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Hughes had not been under a "disability" as defined in the Act, from June 28, 2003, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id*. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Hughes had severe impairments consisting of chronic low back pain due to degenerative disc disease, severe neck pain, severe left shoulder pain, osteoarthritis in her feet bilaterally, swelling and numbness of the left arm and leg, headaches, and depression, there were a significant number of light exertional jobs in the national economy that she could perform.

Hughes argues that the ALJ's decision is not supported by substantial evidence. More specifically, she contends that the ALJ erred in finding that her impairments did not meet or equal listing 1.04A, the ALJ failed to properly develop the record, the ALJ ignored and mischaracterized treatment evidence that proved Hughes was totally disabled, and the ALJ's credibility determination was patently erroneous.

As to Hughes' first claim of error, she has the burden of showing that her impairments met or medically equaled a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). She must show that her impairments "satisfy all of the various criteria specified in the listing." *Id.* Listing 1.04A requires the following:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness

3

or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A.

In support of her contention that her spinal impairment satisfied the criteria of listing 1.04A, Hughes points to various pages of the record. The Commissioner points out that all of the evidence cited by Hughes pre-dates the time period at issue in this case. The onset date of disability is June 28, 2003. (R. at 16). As explained by the ALJ, Hughes had filed prior applications for DIB and SSI on August 28, 2001, and those applications were denied on June 27, 2003. *Id.* The request for review was denied by the Appeals Council on October 22, 2004. *Id.* The ALJ found no reason or authority to reopen the prior decision. *Id.*

Moreover, the ALJ noted that medical expert Dr. Lorber testified that Hughes' impairments did not meet or medically equal listing 1.04A. (R. at 19, 23, 242). Dr. Lorber testified that an orthopaedic surgeon reviewed the MRIs of the cervical spine and opined that there was no neural compression. (R. at 241, 301). The state agency physicians also concluded that Hughes did not have an impairment that met or medically equaled a listing. (R. at 66-69). There is substantial evidence to support the ALJ's conclusion that Hughes' spinal impairment was not severe enough to satisfy the requirements of listing 1.04A. Hughes has not met her burden of pointing to relevant evidence of record showing that all of the criteria of those listings were satisfied.

As to the second claim of error, Hughes asserts that the ALJ erred by failing to develop the record. Hughes argues that the ALJ should have ordered a consultative psychological evaluation because such an evaluation was required to determine whether her impairment met or equaled listing 12.07 for somatoform disorders.

12.07 Somatoform Disorders: Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented by evidence of one of the following:

1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

2. Persistent nonorganic disturbance of one of the following:

a. Vision; or
b. Speech; or
c. Hearing; or
d. Use of a limb; or

4

e. Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia; or
f. Sensation (e.g., diminished or heightened).

3. Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.07.

It is true that at the hearing, psychologist Dr. Brooks testified that a psychological evaluation conducted in 2001 revealed a "[p]ain disorder associated with both somatization *tendencies* and her reported herniated disc condition." (R. at 245, 519) (emphasis added). Dr. Brooks testified that Hughes had not been given a formal diagnosis of a somatization disorder. (R. at 245). Dr. Brooks testified that the 2001 evaluation revealed a significant emotional component to her complaints of pain, but Hughes has disagreed with that and has not received any psychiatric treatment. (R. at 246). Dr. Brooks concluded that there was no evidence of any cognitive impairment and Hughes' Global Assessment of Functioning ("GAF") scores of 65 to 75 would not impose any psychological limitations on her ability to work. (R. at 247).

The ALJ stated at the hearing that it would not be appropriate to order another psychological consultative examination because Hughes had not even alleged that she had a somatoform disorder. (R. at 248). The ALJ concluded that based on the objective evidence of record, there was no medically determinable mental impairment. (R. at 23). "The ALJ is not required to order [consultative] examinations, but may do so if an applicant's medical evidence about a claimed impairment is insufficient." *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007) (citing 20 C.F.R. §§ 416.912(f), 416.917). As pointed out by the Commissioner, Hughes has not presented any evidence that she had been diagnosed with a somatoform disorder or that she had marked limitations in activities of daily living, in maintaining social functioning, or in maintaining concentration, persistence, or pace, as required by listing 12.07. In light of the 2001 consultative evaluation, the testimony of Dr. Brooks, and Hughes' own denial that there was any psychological component to her pain symptoms, the ALJ did not abuse his discretion in not ordering a psychological evaluation. In this case, as in *Skinner*, "[t]he ALJ was not required to order a consultative examination in order to adequately develop the record." *Id.* at 844.

5

Next, Hughes argues that the ALJ ignored and mischaracterized treatment evidence which provided that her combined impairments rendered her totally disabled. Hughes points to a number of records dating from January 1999 through November 2001, which she contends the ALJ should have discussed. As noted above, however, the ALJ properly determined that the time period being adjudicated in this case began on June 28, 2003, almost two years after the evidence cited by Hughes. The rest of the evidence cited by Hughes consists entirely, with one exception, of reports by treating physician Dr. Driscoll.[1]

The ALJ did not ignore the findings of treating physician Dr. Driscoll, family physician. The ALJ reviewed the evaluation of Dr. Driscoll's reports by Dr. Lorber, the medical expert. (R. at 22). Dr. Lorber testified that Dr. Driscoll had treated Hughes since 2001. (R. at 21). Dr. Lorber noted that Dr. Driscoll reported Hughes had been examined by multiple specialists and had had extensive radiologic and neurologic testing but had no definitive diagnosis. (R. at 22).

The ALJ noted that Dr. Driscoll stated that Hughes had severe neck, shoulder and low back pain, for which she had had multiple work-ups and specialist referrals. (R. at 21). Dr. Driscoll reported that Hughes had some degree of pain control with narcotic pain medications. (R. at 22). Dr. Driscoll stated that Hughes could not lift, bend, or twist much, or sit more than fifteen minutes at a time because of low back and leg pain. (R. at 22). Dr. Driscoll opined that Hughes could not perform gainful employment because she was capable of less than sedentary work. *Id.*

The ALJ properly noted that the ultimate determination as to a claimant's disability is reserved to the Commissioner and that a treating physician's statement that a claimant is disabled or unable to work is not conclusive. *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant, however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.'"); 20 C.F.R. §§ 404.1527(e) and 416.927(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

The ALJ also acknowledged the RFC assessments completed by Dr. Driscoll. In January 2003, Dr. Driscoll opined that Hughes could perform less than sedentary work, indicating that she could sit for 2 hours, stand for 3 hours, and walk for 2 hours in an 8 hour work day. (R. at 22, 177). In June of 2003, Dr. Driscoll opined that Hughes was "incapable

---

[1]The court does agree with Hughes in finding that the ALJ's reasoning about Dr. Driscoll referring Hughes to other physicians was flawed and unsupported. The ALJ stated that the act of Dr. Driscoll referring Hughes to other physicians "is a tacit admission that he is unable to treat her and requires assistance." (R. at 22). This assumption has no basis of record nor does it even make common sense. Physicians often refer their patients to doctors of other medical disciplines, and this practice hardly means that the originating physician is "unable to treat" them.

of gainful employment." (R. at 22, 176).[2] In April 2004, Dr. Driscoll completed another RFC assessment which was consistent with his June of 2003 report. (R. at 22, 196). The ALJ also discussed the physician's December 2005 letter in which Dr. Driscoll gave a diagnosis of chronic pain syndrome, cervical spondylosis, and degenerative disc disease of the cervical and lumbar spine and concluded that Hughes was unable to maintain any type of gainful employment and should be considered totally disabled. (R. at 22-23, 202). The ALJ did not credit this opinion because the objective clinical test results upon which Dr. Driscoll relied in making his diagnoses were taken from a November 2000 hospital admission which had been considered in the prior decision on June 27, 2003, in which another ALJ denied benefits and the Appeals Council upheld that denial. (R. at 23, 202). The ALJ further stated that "there is no opinion or objective evidence that supports Dr. Discoll's statement that the claimant cannot work." (R. at 24). The ALJ also relied in part on the opinions of state agency physicians that Hughes was not disabled.

"A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); 20 C.F.R. § 404.1527(d)(2). The ALJ noted that medical expert Dr. Lorber opined that Hughes could function at a light level of work activity without other restrictions. (R. at 23). The ALJ stated that he gave more weight to Dr. Lorber's opinion than that of treating physician Dr. Driscoll because it was in conformance with the principles set forth in SSR 96-2p (one of which is that although medical experts who testify do not examine claimants they do have the opportunity to review the entire record and hear the testimony of the claimant). (R. at 20, 23). Moreover, as noted, the ALJ determined that the basis for Dr. Driscoll's evaluations did not support a finding of disability. The ALJ concluded that Dr. Driscoll's opinions were not entitled to controlling weight because the ultimate determination of disability is reserved to the Commissioner and his opinions were not well-supported by objective evidence. (R. at 23-24). "An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, or when the treating physician's opinion is internally inconsistent, as long as he minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (internal citations and quotations omitted). The ALJ explained his rationale for not giving Dr. Driscoll's opinions controlling weight, and those explanations were supported by substantial evidence. There was no reversible error in this regard.

In reviewing the medical evidence, the ALJ also discussed the report of consulting examining physician Dr. Sheikhyousef who reported Hughes was neurologically intact, had normal gait and station, could tandem walk without difficulty, a straight leg raising test was negative, and her muscle strength was 5/5 and symmetric throughout. (R. at 22). Dr. Sheikhyousef's impression was back pain and left shoulder discomfort. *Id.* Hughes

---

[2]In discussing the January and June of 2003 assessments by Dr. Driscoll, medical expert Dr. Lorber stated that "there is no evidence of any change between January of '03 and June of '03 in her medical condition, and he [Dr. Driscoll] does not explain why the reduction from light to less than sedentary was made." (R. at 241).

contends that the ALJ improperly ignored Dr. Sheikhyousef's note that Hughes' multiple tender spots "may be suggestive of fibromyalgia." (R. at 173). Hughes asserts that the ALJ never considered her fibromyalgia to be disabling.

Although the ALJ did not consider fibromyalgia to be disabling, substantial evidence would not support such a finding if it had been made. In addition to stating that Hughes' tender spots might be suggestive of fibromyalgia, Dr. Sheikhyousef continued, "[H]owever, the discrepancy between her symptoms and physical findings makes me think that her symptoms are probably not related to physical problems and may be related to stress and emotional problems." (R at 173). There is no evidence of record that fibromyalgia was diagnosed or, even if it were diagnosed, that its symptoms were disabling.

As her final claim of error, Hughes argues that the ALJ's credibility determination was patently erroneous because it was contrary to Social Security Ruling ("SSR") 96-7p. She contends that the ALJ "failed to consider all of the relevant evidence regarding any of the seven factors he was required to consider." Hughes, however, has not developed this argument by directing the court to the "relevant evidence" the ALJ purportedly failed to consider. The court "will not scour a record to locate evidence supporting a party's legal argument." *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005). *See also Herrmann v. Astrue*, No. 07-C-6914, 2010 WL 356233 (N.D.Ill. Feb. 1, 2010) ("It is not enough to simply rely on the evidence in the court's possession. Each party bears the burden of pointing out specific portions of that evidence to support his or her case.").

"[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)-(4) (internal quotation omitted)). The ALJ discussed the evidence that related to each of these factors. (R. at 20-24). A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). In light of the undeveloped nature of this claim of error, the court does not find the ALJ's credibility determination to be "patently wrong."

As noted, the court's role in this case is not to attempt a *de novo* determination of Hughes' entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility

8

determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, even if the court might have weighed the evidence differently, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Hughes' impairments and conclusion that she had not been under a disability as defined by the Act from June 28, 2003, through October 10, 2008, the ALJ's decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Hughes' applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Hughes is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/01/2011

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana